

# NC DEPARTMENT of INSURANCE
## MIKE CAUSEY, COMMISSIONER

**SERVICE OF PROCESS**

Tel 919.716.6610   Fax 919.716.6757

9 July 2021

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Palomar Specialty Insurance Company
7979 Ivanhoe Avenue, Suite 500
La Jolla, CA 92037

Re:   **The Colony Club at Landfall Homeowners' Association, Inc.**

vs.

**Palomar Specialty Insurance Company**

Dear Corporate Secretary:

Enclosed herewith are document[s] entitled **Civil Summons and Complaint [Jury Trial Demanded]** in the above action which this Department received on **July 2, 2021**.

Mike Causey
Commissioner of Insurance

Courtney H. Ethridge
Special Deputy for
Service of Process

Enclosure



EXHIBIT A



# NC DEPARTMENT of INSURANCE
## MIKE CAUSEY, COMMISSIONER

**SERVICE OF PROCESS**

Tel 919.716.6610  Fax 919.716.6757

The Colony Club at Landfall Homeowners' Association, Inc.

vs.    New Hanover Co. File No. 21 CVS 02374

**Palomar Specialty Insurance Company**

I, Courtney H. Ethridge, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons and Complaint [Jury Trial Demanded]** in this action and acknowledge receipt of a copy of the same, under the provision of the North Carolina General Statute Section 58-16-30 as process agent for **Palomar Specialty Insurance Company**.

This the **2nd** day of **July, 2021**.

Mike Causey
Commissioner of Insurance

Courtney H. Ethridge
Special Deputy for
Service of Process

1201 MAIL SERVICE CENTER | RALEIGH, NC 27699-1201 | WWW.NCDOI.COM

21 CVS 02374

# STATE OF NORTH CAROLINA

NEW HANOVER County

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
THE COLONY CLUB AT LANDFALL HOMEOWNERS'
**Address**
ASSOCIATION, INC., 1700-1753 Signature Place
**City, State, Zip**
Wilmington NC 28405

VERSUS

**Name Of Defendant(s)**
PALOMAR SPECIALTY INSURANCE COMPANY

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

**Name And Address Of Defendant 1**
PALOMAR SPECIALTY INSURANCE COMPANY
c/o North Carolina Commissioner of Insurance Agent for Service
1201 Mail Service Center
Raleigh NC 27699-1201

**Name And Address Of Defendant 2**

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

**Name And Address Of Plaintiff's Attorney** (if none, Address Of Plaintiff)
H. Forest Horne, Esq.
MARTIN & JONES, PLLC
4140 Parklake Avenue, Suite 400
Raleigh NC 27612

Date Issued: 6·21·21
Time: 8:53 ☒ AM ☐ PM
Signature: *Lindsay Faulk*
☐ Deputy CSC ☒ Assistant CSC ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement
Time ☐ AM ☐ PM
Signature
☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

**A TRUE COPY**
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: *Lindsay E. Faulk*
Clerk of Superior Court

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER | CASE NO.

FILED
2021 JUN 21 A 8: 53
NEW HANOVER CO., C.S.C.

THE COLONY CLUB AT LANDFALL
HOMEOWNERS' ASSOCIATION, INC.,

    Plaintiff,

v.

PALOMAR SPECIALTY INSURANCE
COMPANY;

    Defendant.

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff, The Colony Club at Landfall Homeowners Association, Inc., (hereafter "Colony Club HOA") complaining of Defendant Palomar Specialty Insurance Company (hereafter "Palomar Insurance"), alleges the following:

## NATURE OF ACTION AND RELIEF SOUGHT

1. On or about September 9, 2019, a powerful hailstorm (hereafter "the hailstorm") hit the North Carolina coast and inland areas of Wilmington, North Carolina, specifically in and around the location of the multi-family dwelling homes which belong to the Colony Club HOA. The Colony Club HOA procured insurance for the Colony Club homes which were members of the HOA and which are located at 1700-1753 Signature Place, Wilmington, NC 28405. The Colony Club homes were extensively damaged by the hailstorm. Prior to the hailstorm, Defendant Palomar Insurance contracted with The Colony Club HOA to insure the Colony Club homes against storm damage, including damage caused by hailstorms. After the hailstorm, a claim was made on behalf of the Colony Club HOA with Defendant Palomar Insurance. Defendant Palomar Insurance thereafter denied the claim and refused to compensate Colony

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: *Lindsay E. Faulk*
Deputy Clerk of Superior Court

Club HOA and its homeowner members for the damage to their homes and the benefits due under the insurance contract, including undisputed portions of the claim for the hailstorm damage.



Ex. A – Arial view of The Colony Club at Landfall

## PARTIES

2. The Colony Club HOA is a North Carolina non-profit corporation with insured property located in Wilmington, North Carolina.

3. Defendant Palomar Insurance, upon information and belief, is an Oregon corporation and is licensed to sell insurance in North Carolina.

4. At all times pertinent hereto, Defendant Palomar Insurance has been involved in the issuance, marketing, selling, and delivery of insurance policies in North Carolina, including issuing policies insuring property and interests of North Carolina homeowners as described in N.C. Gen. Stat. §58-3-1, and the policy at issue insuring the Colony Club HOA and the homes that are a part of Colony Club HOA.

2

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. §§ 7A-240 & 7A-243. The claims are civil in nature and the amount in controversy exceeds twenty-five thousand dollars ($25,000).

6. Personal jurisdiction over Defendant is conferred upon and vested in this Court by virtue of N.C. Gen. Stat. § 1-75.4(1)(d), as Defendant is engaged in substantial activity within North Carolina, and N.C. Gen. Stat. § 1-75.4(10)(a) and (b), as this matter arises out of a contract of insurance between Defendant Palomar Insurance and Colony Club HOA in North Carolina at all relevant times and the hailstorm is the underlying event out of which Colony Club HOA's claims arise.

7. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82.

## STATEMENT OF FACTS

8. Colony Club is a residential multi-family complex, located at 1700-1753 Signature Place, Wilmington, North Carolina ("insured property"), and is comprised of seventeen buildings containing forty-three dwelling units.

9. On and before September 9, 2019, Colony Club's insured property was insured by Defendant Palomar Insurance against damage, including, *inter alia*, hailstorm damage.

10. On or about September 9, 2019, Wilmington, North Carolina experienced the hailstorm which was described as "[a] cluster of severe thunderstorms developed across southeastern North Carolina during the afternoon of September 9, dropping hail up to one inch in diameter in Wilmington. Strong wind gusts damaged trees and roofs in Wilmington…"[1] "Hazards include 60 mph wind gusts…"[2] "Doppler radar detected Quarter size hail… [T]he

---

[1] https://www.weather.gov/ilm/2019ClimateSummary (last visited on February 2, 2021).
[2] http://www.interactivehailmaps.com/local-hail-map/wilmington-nc/ (last visited on February 2, 2021).

3

entire storm produced hail for roughly 4 hour(s)."[3] The expected fall speed of such hail is up to 40 mph.[4] Reportedly, 5,474 households were impacted by one inch or larger hail.[5] An estimated 40,556 buildings were in the affected area.[6]

11. The direct force of the hailstorm caused hail to collide with Colony Club's insured property and specifically the copper roofs of the homes in Colony Club.

12. As a direct and proximate result of the above, Colony Club's insured property was damaged, primarily damaging the copper roofs on the Colony Club homes.

13. Prior to the September 9, 2019, landfall of the hailstorm, Defendant Palomar Insurance contracted with the Colony Club HOA to insure the Colony Club's property against windstorm and hailstorm damage for consideration received, as evidenced by the insurance policy numbered CPARP-19-1000133-00 ("Policy").

14. Prior to September 9, 2019, the Colony Club HOA was the named insured on said policy of insurance, and that on September 9, 2019, said policy was in full force and effect.

15. The issuance of this insurance policy by Defendant Palomar Insurance created a binding contract of insurance between the Colony Club HOA and the Defendant Palomar Insurance and gave rise to the contractual relationship between the Colony Club HOA and the Defendant Palomar Insurance.

16. On or about October 2, 2019, Colony Club's hailstorm damage insurance claim was submitted to Defendant Palomar Insurance.

17. Defendant Palomar Insurance assigned Stephen Kotzin of Sedgwick adjusters to inspect the property and investigate Colony Club's claim and hailstorm damage.

---

[3] http://maps.hailstrike.com/hail-report/north-carolina/wilmington-nc-09-09-2019/ (last visited on February 2, 2021).
[4] https://www.nssl.noaa.gov/education/svrwx101/hail/ (last visited on February 2, 2021).
[5] http://www.interactivehailmaps.com/hail-map/september-9-2019/ (last visited on February 2, 2021).
[6] http://maps.hailstrike.com/hail-report/north-carolina/wilmington-nc-09-09-2019/ (last visited on February 2, 2021)

4

18. Vincent F. Fratinardo of YA Engineering Services ("YAES") inspected the insured property on March 18 and 19, 2020. YAES submitted its findings in a storm damage evaluation report and then supplemented that report on December 7, 2020, more than a year after the claim was reported.

19. The YAES report includes, but is not limited to, the following observations:

　　a. In summary, hail related indentations were detected on slopes in all four cardinal orientations…;

　　b. [M]ore frequent [hail related indentations were detected] on west and southwest facing slopes…;

　　c. The large hail indentations, identified by concave dimples in the panel surface, measured less than 1-inch diameter, the majority measured ¾ inch diameter…;

　　d. [T]he number of raised protrusions exceeded the number of hail indentations…;

　　e. Frequency of hail related indentations varied among vents, but it was estimated that each vent had as least one round shaped indentation attributed to hail impacts…;

　　f. The hail related indentations measured less than 1-inch diameter, and were free from scratches, splits and creases;

　　g. Figure 12. Building 1700-1702 test area (east slope); 1 hail indentation…;

　　h. Figure 14. Building 1737-1739-1741 test area (north slope); 1 hail indentation…;

i. Figure 15. Building 1724-1728-1728 test area (southwest slope); 11 hail indentations;

j. Figure 16. Building 1751-1753. ¾-inch diameter round indentation;

k. Figure 17. Building 1708-1710. ¾-inch diameter round indentation;

l. Figure 28. Building 1700-1702. Hail indented power vent cap, one indent;

m. Figure 29. Building 1730-1732. Hail indented power vent cap, frequent indents;

n. Figure 30. Building 1708-1710. Hail indented roof vent, frequent indents;

o. Figure 31. Building 1719-1723. Hail indented roof vent, one indent;

p. The building copper standing seam roof coverings exhibited hail indentations.

q. Indentations were noted on roof slopes in all four cardinal orientations, but dominant on west and southwest facing slopes;

r. YAES did find physical evidence of hail indentations to the copper standing seam roof panels, as noted in this report; and

s. The building copper standing seam roof covering exhibited hail indentations.

20. YAES observed hail damage to Colony Club's roofs and reported its findings to Sedgwick and Defendant Palomar Insurance.

21. Nevertheless, Defendant Palomar Insurance unreasonably and improperly relied upon the YAES report to deny coverage. On December 30, 2020, Defendant declined coverage in its entirety.

22. Defendant Palomar Insurance knew, or should have known, that YAES unreasonably investigated certain components of the claim. First, by relying on the YAES report, Defendant Palomar Insurance deviated from the plain terms of coverage bargained for. YAES

6
Case 7:21-cv-00142-FL   Document 1-3   Filed 08/13/21   Page 10 of 19

determined that "the hail indentations are not functional damage that reduces the service life of the components [to the roof]....Therefore, the hail related distress was limited to cosmetic distress only." Assuming *arguendo* that YAES were correct, *i.e.,* that the damage was cosmetic and not functional (which it is not), such a finding is irrelevant to the policy's plain terms of coverage. The policy covers "direct physical loss unless the loss is excluded or limited" in the policy. The policy provides no exclusion, limitation, or exception requiring that damage be non-cosmetic or functional. While some policies exclude cosmetic damage to roofing systems or property, this one did not. Defendant Palomar Insurance narrowed coverage and broadened the exclusions in a manner not contemplated in the policy when it relied on the YAES report.

23. Second, the YAES report obviously deviated from industry standard in the manner that it measured the extent and severity of hail damage. Insurance industry standard requires that hail impacts be counted in 10' by 10' test squares (100 square feet). By most insurance industry and storm evaluation practices, the threshold for finding sufficient damage to warrant full roof or slope replacement is in the neighborhood of 5 to 10 hail indentations per 100 square foot test square. YAES, however, used 2.83' by 2.83' (8 square feet) test squares. This practice is not supported by any known insurance industry practice and was intended to misrepresent the severity of the hail impacts that YAES did acknowledge. Adjusting YAES's unfounded use of 8 square foot test squares for the 100 square foot industry standard, YAES's test square samples average 38 hail indentations per 100 square feet—a figure well beyond the industry standard threshold requiring full roof replacement. Defendant Palomar and its agents knew that YAES's report unreasonably misrepresented the extent of hail damage, and unreasonably relied on YAES's test square samples in order to provide a pretext for denying coverage.

7
Case 7:21-cv-00142-FL   Document 1-3   Filed 08/13/21   Page 11 of 19

24. Third, and again against industry standard practice, YAES relied on inconclusive weather data to draw conclusions without merit. YAES reported that there was no evidence of hail activity in New Hanover County on September 9, 2019. Mr. Fratinardo of YAES based this conclusion on the National Oceanic and Atmospheric Administration's NCEI storm events database. This database is a catalog of reported storm events by trained storm spotters and others that is compiled by the US Government. The data is only accurate to the extent that a spotter is present in a specific location and to the extent that the spotter reports the information to the NCEI. While the NCEI database is commonly used in the adjusting and forensic engineering industry to demonstrate that hail *did* fall in a given location, it cannot be used to determine that hail *did not* fall in a given location. Indeed, if hail falls in a forest and there is nobody there to report it to the NOAA NCEI, the hail will still have fallen, nonetheless. In order to mask the extent and severity of hail on September 9, 2019, YAES, Sedgwick, and Defendant Palomar Insurance Company improperly relied on the NCEI while ignoring other NOAA radar based resources that did show hail falling at the property and in New Hanover County on September 9, 2019.

25. Defendant Palomar Insurance, in possession of the YAES reports, possessed knowledge of the storm damage personally observed by its agents at the insured Colony Club property and manufactured a pretext for denying coverage by deviating from the four corners of the policy, misrepresenting the number of hail indentations observed, and intentionally relying on inconclusive weather data while ignoring other more conclusive resources.

26. Even a rudimentary search of social media reveals that hail fell in New Hanover County on September 9, 2019.





27. However, in Defendant Palomar Insurance's December 30, 2020 denial letter, it states that "Mr. Fratinardo could not verify any hail event in the Wilmington area on September 9, 2019…. There is insufficient evidence to support that <u>any</u> hail damage occurred at Colony Club on September 9, 2019…" Consequently, Defendant Palomar Insurance denied coverage for the claim entirely.

28. Over a year after the hailstorm made landfall in Wilmington, the subsequent property damage, mitigation, inspections, reports, estimates, denial of insurance benefits, and re-inspection, Defendant Palomar Insurance refused to compensate Colony Club HOA for benefits due under the insurance contract.

29. At all times relevant hereto, all Defendant Palomar Insurance's servants, agents, or employees were acting within the course and scope of said service, agency, employment, thereby making Defendant Palomar liable for acts or omissions of Sedgwick.

30. Despite possession of the YAES report that did verify hail damage to the property (albeit manipulating data regarding severity in a manner obvious to Defendant Palomar Insurance), other information, and access to publicly available information detailing the hailstorm damage, Defendant Palomar Insurance has wrongfully denied the insurance claim of Colony Club HOA.

31. Defendant Palomar Insurance refused and still refuses to fully compensate Plaintiff for benefits due under the insurance contract for the Plaintiff's losses and damages.

### FIRST CLAIM FOR RELIEF
(Breach of Contract Against Defendant Palomar Insurance)

32. The foregoing allegations are re-alleged and incorporated herein.

33. At all times relevant, Colony Club HOA had a valid contract of insurance with Defendant Palomar Insurance, whereby Colony Club HOA agreed to pay and did pay premium payments to Defendant Palomar Insurance in exchange for its promise to indemnify Colony Club HOA for its losses and damage including, but not limited to, the hailstorm damage.

34. At all times relevant, Colony Club HOA was current on all premiums required under the Palomar Policy and the Policy was in full effect.

35. Beginning on September 9, 2019, the hailstorm caused hail and debris to collide with the Colony Club's insured property by direct force of wind and rain, damaging the Colony Club homes.

36. As a direct and proximate result of the above, the Colony Club's insured property was damaged.

37. To mitigate the damage, the Colony Club HOA then contacted Storm Team Construction to assess and address exterior and interior damage.

38. Plaintiff's loss was then reported to Defendant Palomar Insurance.

39. Plaintiff's loss was a Covered Cause of Loss under the policy.

40. Defendant Palomar Insurance wrongfully denied Plaintiff's claim for benefits.

41. Defendant Palomar Insurance's conduct as described above was in violation of the insurance policy and constitutes a breach of contract.

42. As a direct and proximate result of Defendant Palomar Insurance's breach of contract, Colony Club has sustained damages as set forth herein.

43. Plaintiff is entitled to a judgment against Defendant Palomar Insurance for the full amount of their actual damages and attorneys' fees.

## SECOND CLAIM FOR RELIEF

(Unfair and Deceptive Trade Practices Violation Against Defendant Palomar Insurance)

44. The foregoing allegations are re-alleged and incorporated herein.

45. "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1.

46. The sale of insurance in the State of North Carolina affects commerce within North Carolina.

47. North Carolina recognizes a cause of action for Unfair and Deceptive Trade Practices Act under N.C. Gen. Stat. § 75-1.1 ("UDTPA") for conduct described by, in, and outside N.C. Gen. Stat. § 58-63-15 (the "Unfair Claims Act").

48. Defendant Palomar has engaged in unfair and deceptive trade acts and practices in violation of the UDTPA by:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

   f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

   g. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h. Delaying the investigation or payment of claims by requiring an insured claimant to submit a formal proof of loss form after receipt of two preliminary claim report, both of which contain substantially the same information;

i. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage, in order to influence settlements under other portions of the insurance policy coverage;

j. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

k. Failing to pay undisputed portions of Plaintiff's insurance claim;

l. Failing to pay benefits due under the Policy; and

m. Negligently, willfully, recklessly, unreasonably, without just cause, and/or in bad faith refusing to pay benefits due under the Policy.

49. Under the Policy, Defendant Palomar Insurance owed to Colony Club HOA a duty to act in good faith and to deal fairly.

50. By reason of Defendant Palomar Insurance's conduct, Plaintiff directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, unnecessary litigation expenses, and other consequential damages as set forth herein.

51. Plaintiff is entitled to a judgment against Defendant Palomar Insurance for the full amount of their damages, including all actual and consequential damages.

52. Defendant Palomar's conduct also warrants an award of treble damages pursuant to N.C. Gen. Stat. Ann. § 75-16.

53. Because of Defendant Palomar's conduct, Plaintiff is entitled to an award of attorneys' fees against Defendant Palomar pursuant to N.C. Gen. Stat Ann. § 75-16.1.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following:

A. A trial by jury on all claims so triable;

B. Actual, compensatory and treble damages;

C. An award of attorney's fees and costs, as provided by law;

D. Pre-judgment and post-judgment interest at the highest rate allowed by law; and

E. Such other and further relief as this Court may deem just, equitable, or proper.

This the 18th day of June, 2021.

Respectfully Submitted,

**MARTIN & JONES, PLLC**

BY _____
H. Forest Horne, NCSB # 16678
Huntington M. Willis, NCSB # 46506
4140 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 821-0005
Facsimile: (919) 863-6086
Email: hfh@m-j.com
hmw@m-j.com

**DALY & BLACK, P.C.**

BY _____
Richard D. Daly, TX Bar #00796429
(Pro Hac Vice To Be Filed)
James W. Willis, TX Bar # 24088654
(Pro Hac Vice To Be Filed)
2211 Norfolk St., Suite 800

Houston, Texas 77098
Telephone: (713) 655-1405
Facsimile: (713) 655-1587
Email: rdaly@dalyblack.com

**ATTORNEYS FOR PLAINTIFF**