IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 7:21-cv-00142-FL

THE COLONY CLUB AT LANDFALL
HOMEOWNERS' ASSOCIATION, INC.,

              Plaintiff,

v.

PALOMAR SPECIALTY INSURANCE
COMPANY,

              Defendant.

**ANSWER TO COMPLAINT**

COMES NOW the Defendant, Palomar Specialty Insurance Company ("Palomar" or "Defendant"), and hereby responds to the allegations contained in the Complaint of the Plaintiff, The Colony Club at Landfall Homeowners' Association, Inc. ("Plaintiff" or "Colony Club") and would allege and state as follows[1]:

## NATURE OF ACTION AND RELIEF SOUGHT

1.     On or about September 9, 2019, a powerful hailstorm (hereafter "the hailstorm") hit the North Carolina coast and inland areas of Wilmington, North Carolina, specifically in and around the location of the multi-family dwelling homes which belong to the Colony Club HOA, The Colony Club HOA procured insurance for the Colony Club homes which were members of the HOA and which are located at 1700-1753 Signature Place, Wilmington, NC 28405. The Colony Club homes were extensively damaged by the hailstorm. Prior to the hailstorm, Defendant Palomar Insurance contracted with The Colony Club HOA to insure the Colony Club homes against storm damage, including damage caused by hailstorms. After the hailstorm, a claim was made on behalf of the Colony Club

---

[1] All allegations not expressly admitted are denied.

HOA with Defendant Palomar Insurance. Defendant Palomar Insurance thereafter denied the claim and refused to compensate Colony Club HOA and its homeowner members for the damage to their homes and the benefits due under the insurance contract, including undisputed portions of the claim for the hailstorm damage.

**ANSWER**: **Palomar admits that it was party to a policy of insurance with Colony Club which was effective from March 8, 2019 through March 8, 2020 and that Colony Club notified Palomar of an insurance claim on October 2, 2019 regarding purported hailstorm damage. Palomar denies all remaining allegations in Paragraph 1, above.**

## PARTIES

2.      The Colony Club HOA is a North Carolina non-profit corporation with insured property located in Wilmington, North Carolina.

**ANSWER**: **Upon information and belief, admitted.**

3.      Defendant Palomar Insurance, upon information, is an Oregon corporation and is licensed to sell in North Carolina.

**ANSWER**: **Admitted.**

4.      At all times pertinent hereto, Defendant Palomar Insurance has been involved in the issuance, marketing, selling, and delivery of insurance policies in North Carolina, including issuing policies insuring property and interests of North Carolina homeowners as described in N.C. Gen. Stat. § 58-3-1, and the policy at issue insuring the Colony Club HOA and the homes that are a part of Colony Club HOA.

**ANSWER**: **Palomar admits that it was party to a policy of insurance with Colony Club which was effective from March 8, 2019 through March 8, 2020, and**

that the U.S. District Court for the Eastern District of North Carolina has personal jurisdiction over the parties to this action, for this action only. Palomar denies all remaining allegations in Paragraph 4, above.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. §§ 7A-240 & 7A-243. The claims are civil in nature and the amount in controversy exceeds twenty-five thousand dollars ($25,000).

**ANSWER: Following removal of this action to this Honorable Court, Palomar admits that the amount in controversy and citizenship of the parties allow the U.S. District Court for the Eastern District of North Carolina to exercise diversity jurisdiction over the Parties to this action. Palomar denies all remaining allegations in Paragraph no. 5, above.**

6.     Personal jurisdiction over Defendant is conferred upon and vested in this Court by virtue of N.C. Gen. Stat. § 1-75.4(I)(d), as Defendant is engaged in substantial activity within North Carolina, and N.C. Gen. Stat. § 1-75.4(10)(a) and (b), as this matter arises out of a contract of insurance between Defendant Palomar Insurance and Colony Club HOA in North Carolina at all relevant times and the hailstorm is the underlying event out of which Colony Club HOA's claims arise.

**ANSWER: Following removal of this action to this Honorable Court, Palomar admits that the U.S. District Court for the Eastern District of North Carolina has personal jurisdiction over the parties to this action, for this action only. Palomar denies all remaining allegations in Paragraph no. 6, above.**

3

7.      Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82.

**ANSWER: Following removal of this action to this Honorable Court, Palomar admits that the U.S. District Court for the Eastern District of North Carolina is the proper venue for this action**

## STATEMENT OF FACTS

8.      Colony Club is a residential multi-family complex, located at 1700-1753 Signature Place, Wilmington, North Carolina ("insured property"), and is comprised of seventeen buildings containing forty-three dwelling units.

**ANSWER: Upon information and belief, admitted.**

9.      On and before September 9, 2019, Colony Club's insured property was insured by Defendant Palomar Insurance against damage, including *inter alia*, hailstorm damage.

**ANSWER: Palomar admits that it issued a policy of insurance to Colony Club numbered CPARP-19-1000133-00 which was effective from March 8, 2019 through March 8, 2020 (the "Policy"). Palomar also admits that certain Colony Club property was insured under the Policy, subject to all terms and provisions in the Policy. Palomar denies all remaining allegations.**

10.      On or about September 9, 2019, Wilmington, North Carolina experienced the hailstorm which was described as "[a] cluster of severe thunderstorms developed across southeastern North Carolina during the afternoon of September 9, dropping hail up to one inch in diameter in Wilmington.   Strong wind gusts damaged trees and roofs in Wilmington…"[2]  "Hazards include 60 mph wind gusts…"[3]  Doppler radar detected Quarter

[2] https://www.weather.gov/ilm/2019ClimateSummary (last visited on February 2, 2021).
[3] http://www.interactivehailmaps.com/local-hail-map/wilmington-nc/ (last visited on February 2, 2021).

size hail… [T]he entire storm produced hail for roughly 4 hour(s)."[4]  The expected fall speed of such hail is up to 40 mph.[5]  Reportedly, 5,474 households were impacted by one inch or larger hail.[6]  An estimated 40,556 buildings were in the affected area.[7]

**ANSWER: Palomar lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 10 and the six footnotes to those allegations. Accordingly, Palomar denies the same.**

11.    The direct force of the hailstorm caused hail to collide with Colony Club's insured property and specifically the copper roofs of the homes in Colony Club.

**ANSWER: Palomar lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth above. Accordingly, Palomar denies the same.**

12.    As a direct and proximate result of the above, Colony Club's insured property was damaged, primarily damaging the copper roofs on the Colony Club homes.

**ANSWER: Denied.**

13.    Prior to the September 9, 2019, landfall of the hailstorm, Defendant Palomar Insurance contracted with the Colony Club HOA to insure the Colony Club's property against windstorm and hailstorm damage for consideration received, as evidenced by the insurance policy numbered CPARP-19-1000133-00 ("Policy").

**ANSWER: Palomar admits that it issued a policy of insurance to Colony Club numbered CPARP-19-1000133-00, which was effective from March 8, 2019 through**

---

[4] http://maps.hailstrike.com/hail-report/north-carolina/wilmington-nc-09-09-2019/ (last visited on February 2, 2021).
[5] https://www.nssl.noaa.gov/education/svrwx101/hail/ (last visited on February 2, 2021).
[6] http://www.interactivehailmaps.com/hail-map/september-9-2019/ (last visited on February 2, 2021).
[7] http://maps.hailstrike.com/hail-report/north-carolina/wilmington-nc-09-09-2019/ (last visited on February 2, 2021).

**March 8, 2020. Palomar also admits that certain Colony Club property was insured**

**under the Policy, subject to all terms and provisions in the Policy. Palomar denies**

**all remaining allegations.**

14.     Prior to September 9, 2019, the Colony Club HOA was the named insured

on said policy of insurance, and that on September 9, 2019, said policy was in full force

and effect.

**ANSWER: Admitted.**

15.     The issuance of this insurance policy by Defendant Palomar Insurance

created a binding contract of insurance between the Colony Club HOA and the Defendant

Palomar Insurance and gave rise to the contractual relationship between the Colony Club

HOA and the Defendant Palomar Insurance.

**ANSWER: Objection, calls for a legal conclusion. Answering further, Palomar**

**incorporates its answer to Paragraph 13, as if fully set forth herein. To the extent**

**any further answer is required, Palomar denies the allegations of Paragraph 15.**

16.     On or about October 2, 2019, Colony Club's hailstorm damage insurance

claim was submitted to Defendant Palomar Insurance.

**ANSWER: Palomar admits that Colony Club submitted a hailstorm damage**

**insurance claim on October 2, 2019 for hailstorm damage purportedly sustained on**

**July 12, 2019. Palomar denies all remaining allegations.**

17.     Defendant Palomar Insurance assigned Stephen Kotzin of Sedgwick

adjusters to inspect the property and investigate Colony Club's claim and hailstorm

damage.

**ANSWER: Admitted.**

6

18.     Vincent F. Fratinardo of YA Engineering Services ("YAES") inspected the insured property on March 18 and 19, 2020. YAES submitted its findings in a storm damage evaluation report and then supplemented that report on December 7, 2020, more than a year after the claim was reported.

**ANSWER: Palomar admits that Vincent Fratinardo of YA Engineering Services inspected the property on March 18-19, 2020 and issued a written report on April 20, 2020 and a supplemental report on December 7, 2020. The YAES reports are written documents which speak for themselves. Palomar denies all remaining allegations in Paragraph 18.**

19.     The YAES report includes, but is not limited to, the following observations:

a.      In summary, hail related indentations were detected on slopes in all four cardinal orientations…;

b.      [M]ore frequent [hail related indentations were detected] on west and southwest facing slopes…;

c.      The large hail indentations, identified by concave dimples in the panel surface, measured less than 1-inch diameter, the majority measured 3/4 inch diameter…;

d.      [T]he number of raised protrusions exceeded the number of hail indentations…;

e.      Frequency of hail related indentations varied among vents, but it was estimated that each vent had as least one round shaped indentation attributed to hail impacts…;

f.      The hail related indentations measured less than 1-inch diameter, and were free from scratches, splits and creases;

g.      Figure 12. Building 1700-1702 test area (east slope); 1 hail indentation…;

h.      Figure 14. Building 1737-1739-1741 test area (north slope); 1 hail indentation…;

7

i.     Figure 15. Building 1724-1728-1728 test area (southwest slope); 11 hail indentations;

j.     Figure 16. Building 1751-1753. 3/4-inch diameter round indentation;

k.     Figure 17. Building 1708-1710. 3/4-inch diameter round indentation;

l.     Figure 28. Building 1700-1702. Hail indented power vent cap, one indent;

m.     Figure 29. Building 1730-1732. Hail indented power vent cap, frequent indents;

n.     Figure 30. Building 1708-1710. Hail indented roof vent, frequent indents;

o.     Figure 31. Building 1719-1732. Hail indented roof vent, one indent;

p.     The building copper standing seam roof coverings exhibited hail indentations;

q.     Indentations were noted on roof slopes in all four cardinal orientations, but dominant on west and southwest facing slopes;

r.     YAES did find physical evidence of hail indentations to the copper standing seam roof panels, as noted in this report; and

s.     The building copper standing seam roof covering exhibited hail indentations.

**ANSWER: The YAES reports are written documents which speak for themselves. Palomar denies all remaining allegations in Paragraph 19.**

20.     YAES observed hail damage to Colony Club's roofs and reported its findings to Sedgwick and Defendant Palomar Insurance.

**ANSWER: Palomar admits that YAES reported its findings and incorporates its answer to Paragraph 18, above. The YAES reports are written documents which speak for themselves. Palomar denies all remaining allegations in Paragraph 20.**

8

21.     Nevertheless, Defendant Palomar Insurance unreasonably and improperly relied upon the YAES report to deny coverage. On December 30, 2020, Defendant declined coverage in its entirety.

**ANSWER: Palomar admits that it issued a coverage position letter on December 30, 2020. The December 30, 2020 letter is a written document which speaks for itself. Palomar denies all remaining allegations in Paragraph 21.**

22.     Defendant Palomar Insurance knew, or should have known, that YAES unreasonably investigated certain components of the claim.  First, by relying on the YAES report, Defendant Palomar Insurance deviated from the plain terms of coverage bargained for. YAES determined that "the hail indentations are not functional damage that reduces the service life of the components [to the roof]….Therefore, the hail related distress was limited to cosmetic distress only."  Assuming *arguendo* that YAES were correct, *i.e.* that the damage was cosmetic and not functional (which it is not), such a finding is irrelevant to the policy's plain terms of coverage. The policy covers "direct physical loss unless the loss is excluded or limited" in the policy. The policy provides no exclusion, limitation, or exception requiring that damage be non-cosmetic or functional. While some policies exclude cosmetic damage to roofing systems or property, this one did not. Defendant Palomar Insurance narrowed coverage and broadened the exclusions in a manner not contemplated in the policy when it relied on the YAES report.

**ANSWER: Denied.**

23.     Second, the YAES report obviously deviated from industry standard in the manner that it measured the extent and severity of hail damage. Insurance industry standard requires that hail impacts be counted in 10' by 10' test squares (100 square feet).

By most insurance industry and storm evaluation practices, the threshold for finding sufficient damage to warrant full roof or slope replacement is in the neighborhood of 5 to 10 hail indentations per 100 square foot test square, YAES, however, used 2.83' by 2.83' (8 square feet) test squares. This practice is not supported by any known insurance industry practice and was intended to misrepresent the severity of the hail impacts that YAES did acknowledge. Adjusting YAES's unfounded use of 8 square foot test squares for the 100 square foot industry standard, YAES's test square samples average 38 hail indentations per 100 square feet - a figure well beyond the industry standard threshold requiring full roof replacement. Defendant Palomar and its agents knew that YAES's report unreasonably misrepresented the extent of hail damage, and unreasonably relied on YAES's test square samples in order to provide a pretext for denying coverage.

**ANSWER: Denied.**

24.     Third, and again against industry standard practice, YAES relied on inconclusive weather data to draw conclusions without merit. YAES reported that there was no evidence of hail activity in New Hanover County on September 9, 2019. Mr. Fratinardo of YAES based this conclusion on the National Oceanic and Atmospheric Administration's NCEI storm events database. This database is a catalog of reported storm events by trained storm spotters and others that is compiled by the US Government. The data is only accurate to the extent that a spotter is present in a specific location and to the extent that the spotter reports the information to the NCEI. While the NCEI database is commonly used in the adjusting the forensic engineering industry to demonstrate that hail *did* fall in a given location, it cannot be used to determine that hail *did not* fall in a given location. Indeed, if hail falls in a forest and there is nobody there to report it to the NOAA

NCEI, the hail will still have fallen, nonetheless. In order to mask the extent and severity of hail on September 9, 2019, YAES, Sedwick, and Defendant Palomar Insurance Company improperly relied on the NCEI while ignoring other NOAA radar based resources that did show hail falling at the property and in New Hanover County on September 9, 2019.

      **ANSWER: Denied.**

25.    Defendant Palomar Insurance, in possession of the YAES reports, possessed knowledge of the storm damage personally observed by its agents at the insured Colony Club property and manufactured a pretext for denying coverage by deviating from the four corners of the policy, misrepresenting the number of hail indentations observed, and intentionally relying on inconclusive weather data while ignoring other more conclusive resources.

      **ANSWER: Denied.**

26.    Even a rudimentary search of social media reveals that hail fell in New Hanover County on September 9, 2019.

      **ANSWER: Palomar lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 26, including what appear to be screenshots of posts on social media. Accordingly, Palomar denies the same.**

27.    However, in Defendant Palomar Insurance's December 30, 2020 denial letter, it states that "Mr. Fratinardo could not verify any hail event in the Wilmington area on September 9, 2019…. There is insufficient evidence to support that <u>any</u> hail damage occurred at Colony Club on September 9, 2019…" Consequently, Defendant Palomar Insurance denied coverage for the claim entirely.

**ANSWER: The December 30, 2020 letter is a written document which speaks for itself. Palomar denies all remaining allegations in Paragraph 27.**

28.     Over a year after the hailstorm made landfall in Wilmington, the subsequent property damage, mitigation, inspections, reports, estimates, denial of insurance benefits, and re-inspection, Defendant Palomar Insurance refused to compensate Colony Club HOA for benefits due under the insurance contract.

**ANSWER: Palomar admits that it has not paid Plaintiff for any damage alleged to have occurred as a result of a September 9, 2019 hailstorm. Palomar denies all remaining allegations of Paragraph 28.**

29.     At all times relevant hereto, all Defendant Palomar Insurance's servants, agents, or employees were acting within the course of said service, agency, employment, thereby making Defendant Palomar liable for acts or omissions of Sedgwick.

**ANSWER: Objection, calls for a legal conclusion. To the extent any further answer is required, Palomar denies the allegations of Paragraph 29.**

30.     Despite possession of the YAES report that did verify hail damage to the property (albeit manipulating data regarding severity in a manner obvious to Defendant Palomar Insurance), other information, and access to publicly available information detailing the hailstorm damage, Defendant Palomar Insurance has wrongfully denied the insurance claim of Colony Club HOA.

**ANSWER: Denied.**

31.     Defendant Palomar Insurance refused and still refuses to fully compensate Plaintiff for benefits due under the insurance contract for the Plaintiff's losses and damages.

**ANSWER: Palomar admits that it has not paid Plaintiff for any damage alleged to have occurred as a result of a September 9, 2019 hailstorm. Palomar denies all remaining allegations of Paragraph 31.**

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Breach of Contract Against Defendant Palomar Insurance)**

32.     The foregoing allegations are re-alleged and incorporated herein.

**ANSWER: Palomar incorporates its prior answers to Paragraphs 1 through 31 above, as if fully stated herein.**

33.     At all times relevant, Colony Club HOA agreed to pay and did pay premium payments to Defendant Palomar Insurance in exchange for its promise to indemnify Colony Club HOA for its losses and damage including, but not limited to, the hailstorm damage.

**ANSWER: Palomar admits, upon information and belief, that Colony Club was current on premium payments to Palomar for the Policy. Palomar denies all remaining allegations of Paragraph 33.**

34.     At all times relevant, Colony Club HOA was current on all premiums required under the Palomar Policy and the Policy was in full effect.

**ANSWER: Palomar admits that it issued the Policy to Colony Club, which was effective from March 8, 2019 through March 8, 2020. Palomar also admits, upon information and belief, that Colony Club was current on premium payments to Palomar for the Policy.**

35.     Beginning on September 9, 2019, the hailstorm caused hail and debris to collide with the Colony Club's insured property by direct force of wind and rain, damaging the Colony Club homes.

13

**ANSWER: Denied.**

36.    As a direct and proximate result of the above, the Colony Club's insured property was damaged.

**ANSWER: Denied.**

37.    To mitigate the damage, the Colony Club HOA then contacted Storm Team Construction to assess and address exterior and interior damage.

**ANSWER: Admitted that Storm Team Construction communicated with Colony Club regarding purported hail damage. Palomar denies all remaining allegations.**

38.    Plaintiff's loss was then reported to Defendant Palomar Insurance.

**ANSWER: Admitted that Colony Club made a claim for hailstorm damage. Answering further, Palomar incorporates its answer to paragraph 16, above. Palomar denies all remaining allegations.**

39.    Plaintiff's loss was a Covered Cause of Loss under the policy.

**ANSWER: Denied.**

40.    Defendant Palomar Insurance wrongfully denied Plaintiff's claim for benefits.

**ANSWER: Denied.**

41.    Defendant Palomar Insurance's conduct as described above was in violation of the insurance policy and constitutes a breach of contract.

**ANSWER: Denied.**

42.    As a direct and proximate result of Defendant Palomar Insurance's breach of contract, Colony Club has sustained damages as set forth herein.

**ANSWER: Denied.**

14

43.     Plaintiff is entitled to a judgment against Defendant Palomar Insurance for the full amount of their actual damages and attorneys' fees.

**ANSWER: Denied.**

## SECOND CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices Violation
Against Defendant Palomar Insurance)**

44.     The foregoing allegations are re-alleged and incorporated herein.

**ANSWER: Palomar incorporates its prior answers to Paragraphs 1 through 43 above, as if fully stated herein.**

45.     "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1.

**ANSWER: Objection, calls for legal conclusion, to which no response is required. To the extent a further answer is required, Palomar denies the allegations above.**

46.     The sale of insurance in the State of North Carolina affects commerce within North Carolina.

**ANSWER: Objection, calls for legal conclusion, to which no response is required. To the extent a further answer is required, Palomar denies the allegations above.**

47.     North Carolina recognizes a cause of action for Unfair and Deceptive Trade Practices Act under N.C. Gen Stat. § 75-1.1 ("UDTPA") for conduct described by, in , and outside N.C. Gen Stat. § 58-63-15 (the "Unfair Claims Act").

**ANSWER**: Objection, calls for legal conclusion, to which no response is required. To the extent a further answer is required, Palomar denies the allegations above.

48.     Defendant Palomar has engaged in unfair and deceptive trade acts and practices in violation of the UDTPA by:

a.      Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b.      Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c.      Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d.      Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.      Failing to affirm for deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f.      Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g.      Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h.      Delaying the investigation or payment of claims by requiring an insured claimant to submit a formal proof of loss from after receipt of two preliminary claim report, both of which contain substantially the same information;

i.      Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage, in order to influence settlements under other portions of the insurance policy coverage;

j.      Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

k.      Failing to pay undisputed portions of Plaintiff's insurance claims;

l.      Failing to pay benefits due under the Policy; and

m.      Negligently, willfully, recklessly, unreasonably, without just cause, and/or in bad faith refusing to pay benefits due under the policy.

**<u>ANSWER</u>: Denied.**

49.    Under the Policy, Defendant Palomar Insurance's conduct, Plaintiff directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, unnecessary litigation expenses, and other consequential damages as set forth herein.

**<u>ANSWER</u>: Denied.**

50.    By reason of Defendant Palomar Insurance's conduct, Plaintiff directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, loss of use of insurance benefits, unnecessary litigation expenses, and other consequential damages as set forth herein.

**<u>ANSWER</u>: Denied.**

51.    Plaintiff is entitled to a judgment against Defendant Palomar Insurance for the full amount of their damages, including all actual and consequential damages.

**<u>ANSWER</u>: Denied.**

52.    Defendant Palomar's conduct also warrants an award of treble damages pursuant to N.C. Gen. Stat. Ann. § 75-16.

**<u>ANSWER</u>: Denied.**

53.    Because of Defendant Palomar's conduct, Plaintiff is entitled to an award of attorneys' fees against Defendant Palomar pursuant to N.C. Gen. Stat. Ann. § 75-16.1.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

Palomar asserts the following affirmative defenses to Plaintiff's Complaint and hereby reserves the right to amend or supplement these defenses as information becomes available and known:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint and all of its claims are barred, in whole or in part, as it fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint and all of its claims are barred, in whole or in part, because there is no evidence that Plaintiff mitigated or minimized any or all of its alleged damages.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are not covered due to the terms, conditions, exclusions, limitations, endorsements, and other provisions of the Policy. Palomar incorporates the Policy by reference as if fully set forth herein.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the application of the Policy's provisions excluding coverage for wear and tear, deterioration, or hidden or latent defect, as shown by the following Policy provisions:

\*       \*       \*

## CONDOMINIUM ASSOCIATION COVERAGE FORM
## (CP 00 17 10 12)

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss

18

*      *      *

## CAUSES OF LOSS – SPECIAL FORM
## (CP 10 30 10 12)

**A.      Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B.      Exclusions**

*      *      *

1.      We will not pay for loss or damage caused by or resulting from any of the following:

*      *      *

d.      (1)      Wear and tear;

(2)      Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

*      *      *

(4)      Settling, cracking, shrinking or expansion.

*      *      *

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the application of the Policy's

provisions excluding coverage for faulty workmanship or maintenance, as shown by the

following Policy provisions:

*      *      *

**B.      Exclusions**

*      *      *

3.      We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss,

19

we will pay for the loss or damage caused by that Covered Cause of Loss:

*     *     *

    c.    Faulty, inadequate or defective:

*     *     *

        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction;

*     *     *

        (4)    Maintenance

of part or all of any property on or off the described premises

*     *     *

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the application of the Policy's provisions excluding coverage due to concealment, misrepresentation, or fraud, as shown by the following Policy provisions:

*     *     *

**COMMERCIAL PROPERTY CONDITIONS**
**(CP 00 90 07 88)**

**A.**    **CONCEALMENT, MISREPRESENTATION OR FRAUD**
This Coverage Part is void in any cause of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

    **1.**    This Coverage Part;
    **2.**    The Covered Property;
    **3.**    Your interest in the Covered Property; or
    **4.**    A claim under this Coverage Part.

*     *     *

**H.**    **POLICY PERIOD, COVERAGE TERRITORY**
Under this Coverage Part:

20

2. We cover loss or damage commencing:
    a. During the policy period shown in the Declarations; and
    b. Within the coverage territory.

\*      \*      \*

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's lack of standing to pursue benefits under the Policy for the Claim subsequent to Plaintiff's execution of an Assignment of Insurance Benefits in favor of Storm Team Construction on or about October 14, 2019. A copy of the Assignment of Insurance Benefits is attached hereto as Exhibit A.

## EIGHTH AFFIRMATIVE DEFENSE

Palomar reserves the right to allege any additional affirmative defenses, as the facts become known.

WHEREFORE, Palomar, having fully answered the Complaint of Plaintiff, asserted its Affirmative Defenses, respectfully prays the Court as follows:

1.      That Plaintiff shall have and recover nothing from Palomar and that Plaintiff's Complaint be dismissed with prejudice;

2.      That Palomar's Affirmative Defenses be sustained;

3.      That the costs and reasonable attorneys' fees Palomar incurs defending this Action be taxed to Plaintiff; and

4.      For such other and further relief as this Honorable Court deems just and proper.

This the __20th__ day of August, 2021.

BUTLER WEIHMULLER KATZ CRAIG LLP

_/s/ L. Andrew Watson_____
L. Andrew Watson
NC Bar No.:  41812
Roman C. Harper
NC Bar No.: 53995
11605 North Community House Road, Suite 150
Charlotte, North Carolina 28277
PH:  (704) 543-2321
FX:  (704) 543-2324
E:   awatson@butler.legal
E:   rharper@butler.legal
*Attorneys for Palomar Specialty Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **ANSWER** has been

served by electronic filing, with the United States District Court for the Eastern District of

North Carolina on the 20th day of August 2021, by using the CM/ECF system to:

H. Forest Horne
Huntington M. Willis
Martin & Jones, PLLC
4140 Parklake Avenue, Suite 400
Raleigh, NC  27612

and by placing the same, postage paid, in the U.S. Mail addressed to all other parties or

their counsel of record as follows:

Richard D. Daly
James W. Willis
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston, TX  77098
*Counsel for Plaintiff*

 /s/ L. Andrew Watson
L. Andrew Watson